UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

DANTE TAYLOR,

        Petitioner,

v.

STEWART ECKERT, Superintendent Wende
Correctional Facility,

        Respondent.

20-CV-6522-FPG

DECISION AND ORDER

---

**I.**    **Introduction**

*Pro se* Petitioner Dante Taylor, an inmate confined at the Wende Correctional Facility, submitted a Petition for a writ of habeas corpus under 28 U.S.C. § 2254 challenging his detention in Respondent's custody. ECF No. 1. He has also filed a Motion for a stay and abeyance to permit him to exhaust "unresolved State Court issues." ECF Nos. 1-3, 5. Taylor is incarcerated pursuant to a judgment entered in Wayne County Court convicting him, upon a jury verdict, of four counts of murder in the first degree (Penal Law §§ 265.27(1)(a)(vii) (two counts), 265.27(1)(a)(viii) (two counts)), two counts of burglary in the first degree (Penal Law §§ 140.30(2), 140.30(3)), and arson in the second degree (Penal Law § 140.25(1)), which was reduced to arson in the third degree on direct appeal. *Id*. at 1-2. Taylor was sentenced to consecutive life sentences without parole on the first-degree murder counts and concurrent determinate sentences of 25 years in prison with five years of post-release supervision on the burglary and arson counts.

The judgment of conviction was affirmed by the New York State Supreme Court, Appellate Division, Fourth Department on February 2, 2018, *see People v. Taylor*, 158 A.D.3d 1095, 72

N.Y.S.3d 256 (4th Dep't 2018), *reargument denied* 160 A.D.3d 1506, 72 N.Y.S.3d 918 (2018), and leave to appeal was denied by the New York State Court of Appeals on August 6, 2018, *see People v. Taylor*, 32 N.Y.3d 941, 109 N.E.3d 1168 (2018), *reconsideration denied*, 32 N.Y.3d 1178, 121 N.E.3d 243 (2019).

In Taylor's Petition and his two petitions for a writ of certiorari, which he incorporates in the instant Petition, he raises two overlapping grounds for relief under the Fourth Amendment, arguing that state court (1) should have suppressed historical cell site location information ("CSLI") evidence that was obtained without a warrant and in violation of the Stored Communications Act ("SCA"), where police investigators made an exigent circumstances request for CSLI based on a false statement of exigency; (2) failed to apply the Supreme Court's June 22, 2018 decision *Carpenter v. United States*, 138 S. Ct. 2206 (2018), to his case; and (3) that he received ineffective assistance of appellate counsel because, following *Carpenter*, counsel did not move to reargue the Appellate Division's CSLI ruling. ECF No. 1 at 5, 7; ECF No. 1-1 at 8, 13-20; ECF No. 1-2 at 8-11, 13 (ineffective assistance).

Respondent answered the Petition, arguing that Taylor's claims are without merit and/or not cognizable on habeas review. ECF No. 16. Petitioner filed a memorandum of law in reply to Respondent's opposition. ECF No. 26.

## II.   Background

### A.   Underlying Facts

Taylor's conviction stems from an incident on July 14, 2013, when a mother and daughter were found deceased inside their neighbor's home in Sodus, New York. They had been pet sitting for the neighbor and had gone to the house that day to feed the animal. Several fires had been set inside the home, and items belonging to the neighbor and the victims were missing. Using cell

site location information ("CSLI"), police officers located the victims' cell phones in a bag in Rochester, New York. The same bag contained a receipt for a purchase made using an electronic benefits card in the name of Taylor's live-in girlfriend. A vehicle matching the description of Plaintiff's registered vehicle, a "dark-colored Mercury Mountaineer" was seen in the driveway of the Sodus residence shortly before the time that the victims entered the house. *See Taylor*, 158 A.D.3d at 1096-97.

Police officers filed an "Exigent Circumstances Form" with Taylor's cell phone company, seeking historical CSLI for his cell phone number from July 14 to July 18, 2013. ECF No. 16-3 at 337 (AT&T Exigent Circumstances Forms); ECF No. 16-5 at 130-31. The CSLI revealed that Taylor's cell phone was located in Sodus at the time of the crime, and search warrants for Taylor's vehicle and home were obtained. ECF No. 16-5 at 132. Police officers found items taken from the Sodus residence inside Taylor's home and later determined that the blood found on those items matched the DNA profile of one of the two victims. *See Taylor*, 158 A.D.3d at 1097. Blood matching the DNA profiles of the victims was also found on a laundry basket inside Taylor's home and inside his vehicle. *Id*.

### B.    State Court Proceedings

Taylor was charged by grand jury indictment with four counts of murder in the first degree, two counts of burglary in the first degree, arson in the second degree, and burglary in the third degree. ECF No. 16-2 at 352-55.

#### 1.    Suppression Motion and Hearing

Taylor moved in Wayne County Court to challenge the sufficiency of the search warrants, citing several grounds, including that "some of the information set forth in the warrant applications was obtained illegally." *Id*. at 390. Taylor asserted, in pertinent part, "that the investigator did not

obtain a court order or a warrant for the cellular records of [Taylor's] cell phone.  These were obtained based upon a request to AT&T which lacks the necessary proof of emergency circumstances required by 18 U.S.C. Section 2702(b)(8) and (c)(4)." *Id*.  "Mr. Taylor has a privacy interest in his cell phone communications and records which is protected against seizure and search by the Federal and New York State Constitutions." *Id*. at 390-91.

A suppression hearing was held on October 18 and November 7, 2013.  ECF No. 16-5 at 15-166, 193-201.  Investigator Eric Hurd testified that, on the morning of July 18, 2013, he prepared an "Exigent Circumstances form . . . and sent [it] to AT&T" seeking information from July 14 to July 18, 2013.  *Id*. at 127, 130-31.  The form "made pursuant to the language at the bottom of the form which authorizes under a federal statute the release of communication or record information to a government entity under certain circumstances." *Id*.  at 127.  The basis of the request requires a "good faith" belief "that an emergency involving danger or death or serious physical injury to another person requires disclosure without delay." *Id*.  The CSLI that Hurd obtained pursuant to the Exigent Circumstances form was included in the warrant application for Taylor's cellular phone.  *Id*. at 132.  This information showed that Taylor's cellular phone was utilized in Sodus during the time of the murders.  *Id*.  Police also had "a tracking device . . . up and going" on Taylor at the time of Hurd's CSLI request because they were preparing to take custody of him later that day.  *Id*. at 132-33.  Hurd testified, "if this turned into a manhunt type of thing where [Taylor] fled, we were going to utilize [the tracking device] to keep location on him." *Id*. at 133.

In his post-suppression hearing memorandum of law, Taylor argued that AT&T CSLI records related to his cell phone number were illegally obtained because Inv. Hurd did not provide a warrant or court order to the cell phone provider.  ECF No. 16-2 at 431.  Hurd instead submitted

4

his request under 18 U.S.C. 2702(c)(4), "which allows a cell phone provider to divulge records to a government entity if the provider 'in good faith, believes that an emergency involving danger of death, or serious physical injury to any person requires disclosure without delay of information relating to the emergency.'" *Id*. at 431-32.  Taylor continued to argue: "No facts were presented to AT&T on which it could be determined whether in fact Mr. Taylor was attempting to avoid surveillance.  Significantly there was no statement that there was any future danger to anyone or any emergency."  ECF No. 16-3 at 1.  The People responded that (1) Investigator Crowley observed Taylor driving away from his Rochester, New York home in his vehicle, which was observed at the crime scene just prior to the murders, and (2) Taylor avoided police surveillance, causing Crowley to stop following Taylor for police safety.  *Id*. at 52, 56, 61; *see also* ECF No. 16-2 at 9 (surveillance on July 17, 2013).  The People further argued that Taylor did not have a legitimate expectation of privacy in his CSLI and that even if there was a statutory violation of 18 U.S.C. § 2702, suppression would not be warranted.  ECF No. 16-3 at 57-64, 75-76.

      Wayne County Court issued an order denying suppression of the AT&T records obtained by Inv. Hurd's exigent circumstances form request to the cell service provider.  *Id*. at 176-78, 180.  The court found, among other things, that "Investigator Hurd and the State Police . . . reasonably infer[red] that the suspect committed the murders and posed a danger if not successfully taken into custody . . . in a timely manner.  The investigation involved a brutal double homicide."  *Id*. at 178.  "Further that even if there was a statutory violation, the exclusionary rule is generally non-applicable to said violations."  *Id*.  At his Wayne County Court jury trial, Taylor was convicted of four counts of murder in the first degree, two counts of burglary in the first degree, and arson in the second degree, and acquitted of burglary in the third degree.  ECF No. 16-2 at 350.

### 2. Appellate Proceedings

On direct appeal, Taylor's appellate counsel contended that the lower court erred by refusing to suppress data regarding his cell phone that was obtained without a warrant. ECF No. 16-3 at 278, 308-20. Appellate counsel further asserted that the lower court's decision "was incorrect in light of the Court of Appeals' decision in *People v Weaver*" (expectation of privacy in GPS data) and "the Supreme Court's decision in *Riley v California*" (warrant required for search of cell phone). *Id*. at 310-14. Taylor submitted a *pro se* supplemental brief addressing an unrelated issue. *Id*. at 388-48. The People responded that the lower court properly denied Taylor's motion to suppress AT&T CSLI data showing that his cell phone was in the area of the crime scene at the time of murders and that there was no statutory violation of the SCA. *Id*. at 391-409. In his reply, appellate counsel reiterated the defense position that location tracking violates reasonable expectations of privacy and that cell phone location data "is particularly sensitive." ECF No. 16-4 at 29-33.

In its February 2, 2018 decision, the Appellate Division reduced Taylor's second-degree arson conviction to third-degree arson, vacated the sentence imposed on that count, and affirmed the judgment, including the CSLI suppression ruling, as modified, remitting the case to Wayne County Court for sentencing on the third-degree arson conviction. *See Taylor*, 158 A.D.3d at 1096 ("We . . . conclude that defendant did not have a reasonable expectation of privacy in information that he revealed to his service provider."); ECF No. 16-4 at 34-40. Appellate counsel subsequently moved for reargument of the Appellate Division's finding that "defendant does not conten[d] that the relevant CSLI dates included passively-generated data, i.e, date that was not generated by the subscriber's proactive us of his or her cell phone." ECF No. 16-4 at 43-47. The motion to reargue was denied on April 27, 2018. *Id*. at 64.

On March 5, 2018, Taylor's appellate counsel submitted an application to the New York State Court of Appeals for leave to appeal the Appellate Division's decision. *Id*. at 65-72. The leave application stated: "This case on appeal presents a preserved question of law identical to the one that the Supreme Court will resolve this year in *Carpenter v United States*." *Id*. at 65. "The issue presented is whether the government must secure a warrant before accessing so-called historical 'cell site location information' (hereinafter 'CSLI')." *Id*.

On June 22, 2018, while Taylor's leave application was still pending, the Supreme Court issued a decision in *Carpenter*, 138 S. Ct. at 2217 ("hold[ing] that an individual maintains a legitimate expectation of privacy in the record of his physical movements as captured through CSLI"). On June 25, 2018 appellate counsel supplemented the leave application by letter in which he advised the Court of Appeals that *Carpenter* had been decided, ECF No. 16-4 at 78, and he presented additional written arguments addressing the "impact of the *Carpenter* decision" on Taylor's case, *id*. at 83-92. The People opposed leave to appeal based on the *Carpenter* decision and noted that Taylor's application for leave had been "pending several months, likely awaiting the . . . decision in *Carpenter*." *Id*. at 80-81. A telephonic argument was held thereafter on July 16, 2018. The Court of Appeals denied leave to appeal on August 6, 2018. *Id*. at 96. Taylor filed a *pro se* submission, dated October 1, 2018, arguing the use of CSLI under *Carpenter*, *id*. at 98-99, and a motion for reargument, dated September 22, 2018, *id*. at 101-106. The Court of Appeals denied Taylor's motion for reconsideration on January 3, 2019. *Id*. at 110.

On March 28, 2019, Taylor filed a motion to reargue and an application for a writ of error *coram nobis* vacating the Appellate Division's February 2, 2018 order. *Id*. at 111-30. The Appellate Division dismissed the motion to reargue as untimely and denied the motion for a writ of error *coram nobis* on June 7, 2019. *Id*. at 134. Taylor then moved to reargue the Appellate

7

Division's June 7, 2019 order, but his motion was denied on September 27, 2019. *Id*. at 143. Leave to appeal the denial was denied by the Court of Appeals. *Id*. at 163. On May 22, 2019, Taylor submitted his first *pro se* petition for a writ of certiorari to the Supreme Court in his direct appeal, *id*. at 170-296; *see also* ECF No. 1-1, and it was denied on November 4, 2019, ECF No. 16-4 at 344. Taylor filed his second petition for a writ of certiorari to the Supreme Court with respect to the denial of his motion for a writ of error *coram nobis*. ECF No. 16-4 at 345; *see also* ECF No. 1-2. The second petition was denied on February 24, 2020. ECF No. 16-4 at 417.

On June 21 and August 8, 2019, Taylor also filed Wayne County Court motions for renewal and reargument of the court's pre-trial suppression order and for the appointment of counsel. *Id*. at 419, 454. Taylor's motion for counsel was denied on July 15, 2019, *id*. at 452-53, and his motion for reargument was denied on August 9, 2019, *id*. at 494-497. Taylor's subsequent application to the Appellate Division for leave to appeal Wayne County Court's July 15, 2019 order was dismissed on September 10, 2019. *Id*. at 542. The instant Petition was filed on July 17, 2020. ECF No. 1.

### III.   Legal Standard in 2254 Cases

Relief under 28 U.S.C. § 2254 is available to a person held "in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254. To determine whether Petitioner is entitled to a writ of habeas corpus, the Court applies the standard of review set forth in § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Section 2254(d) provides, in relevant part, that a federal court shall not grant a writ of habeas corpus "with respect to any claim that was adjudicated on the merits in State court proceedings unless" the state court's adjudication of the claim:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). "Clearly established Federal law" is defined as Supreme Court "precedent existing at the time the defendant's conviction became final." *McKinney v. Artuz*, 326 F.3d 87, 96 (2d Cir. 2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 381 (2000)). A decision is "contrary to" clearly established federal law if (1) "the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law" or if (2) "the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court" and arrives at an "opposite" result. *Williams*, 529 U.S. at 405. "A state court decision involves an 'unreasonable application' of clearly established federal law as determined by the Supreme Court when 'the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.'" *Jones v. West*, 555 F.3d 90, 96 (2d Cir. 2009) (brackets omitted) (quoting *Williams*, 529 U.S. at 413). Under either prong of Section 2254(d), "a determination of a factual issue made by a State court shall be presumed to be correct" unless a petitioner rebuts the presumption "of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see also Bierenbaum v. Graham*, 607 F.3d 36, 48 (2d Cir. 2010).

### IV. Petitioner's Claims

#### A. Fourth Amendment Claim

In his Petition, Taylor contends that his CSLI evidence was collected in violation of the Fourth Amendment. The Court concludes that his Fourth Amendment arguments do not provide a basis for § 2254 relief under the rule of *Stone v. Powell*, 428 U.S. 465 (1976).

9

In *Stone*, the Supreme Court held that "[w]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." 428 U.S. at 482. Following *Stone*, the Second Circuit developed the following "litmus test to discern when a state prisoner has been denied an opportunity for full and fair litigation of his fourth amendment claims." *Capellan v. Riley*, 975 F.2d 67, 70 (2d Cir. 1992). The court may review Fourth Amendment claims in habeas petitions in one of two instances: "(a) if the state has provided no corrective procedures at all to redress the alleged fourth amendment violations; or (b) if the state has provided a corrective mechanism, but the defendant was precluded from using that mechanism because of an unconscionable breakdown in the underlying process." *Id*.

Here, Petitioner asserts a theory based on the second instance.[1] He contends that an "unconscionable breakdown" occurred when the state court "fail[ed] to conduct a reasoned inquiry into . . . the People's claim that exigency existed *at the time when* police investigators made the SCA application to AT&T." ECF No. 26 at 10. This does not present "an unconscionable breakdown in the underlying process." *Capellan*, 975 F.2d at 70. As stated above, state courts need only provide "an *opportunity* for full and fair litigation of a fourth amendment claim," *Capellan*, 975 F.2d at 71, "it matters not whether the petitioner actually 'took advantage of the State's procedure,'" *Molnar v. Poole*, 456 F. Supp. 2d 424, 428 (W.D.N.Y. 2006) (quoting *Graham v. Costello*, 299 F.3d 129, 134 (2d Cir. 2002)). Thus, even if the state trial court and the

---

[1] "[A]s the Second Circuit has noted, the federal courts have approved New York's procedure for litigating Fourth Amendment claims . . . as being facially adequate." *Molnar v. Poole*, 456 F. Supp. 2d 424, 428 (W.D.N.Y. 2006). Here, Taylor litigated this Fourth Amendment claim at the trial court level at a suppression hearing and on direct appeal before the state Appellate Division and the Court of Appeals.

10

Appellate Division erroneously decided this issue, Taylor is not entitled to federal review of his Fourth Amendment claim.  Taylor's allegation that the trial court did not "make a full inquiry of the facts" does not constitute an unconscionable breakdown in the process.  As described above, "the state courts conducted a reasoned inquiry into the relevant questions of facts and law," *Valtin v. Hollins*, 248 F. Supp. 2d 311, 317 (S.D.N.Y. 2003), during the suppression hearing where testimony was taken concerning the circumstances surrounding the "Exigent Circumstances form."  ECF No. 16-5 at 127, 130-31.  The suppression court concluded:

> It is reasonable under the circumstances for Investigator Hurd and the State Police to reasonably infer that the suspect committed the murders and posed a danger if not successfully taken into custody and taken into custody in a timely manner.  The investigation involved a brutal double homicide.  Further that even if there was a statutory violation, the exclusionary rule is generally non-applicable to said violations.

ECF No. 16-3 at 178.

Because Taylor claims that the state courts erred in their rulings, this Court does not have the authority to review his claim "since a mere disagreement with the outcome of a state court ruling is not the equivalent of an unconscionable breakdown in the state's corrective process." *Molnar*, 456 F. Supp. 2d at 428.  "An unconscionable breakdown in the underlying process occurs when 'the totality of state procedures allegedly did not provide rational conditions for inquiry into federal law.'"  *Cutts v. Miller*, No. 19-CV-10721 (LJL), 2021 WL 242891, at *6 (S.D.N.Y. Jan. 25, 2021) (quoting *Capellan*, 975 F.2d at 72).  Even to the extent that Taylor claims that the state courts erred in their rulings in light of *Carpenter*, and as the Second Circuit concluded regarding the same circumstance in *Capellan*, "this would not give us authority to review his claims since a mere disagreement with the outcome of a state court ruling is not the equivalent of an unconscionable breakdown in the state's corrective process."  975 F.2d at 72.

In *Capellan*, petitioner had appealed his state criminal conviction to the Appellate Division, First Department, arguing that police officers "had violated his reasonable expectation of privacy" during a search of the apartment of which he was a temporary occupant. *Id*. at 68-69. "He maintained that because the court applied an erroneous standing test, he had been denied the opportunity for fair litigation of his suppression claim." *Id*. at 69. The Appellate Division confirmed his conviction and while Capellan's application seeking leave to appeal to the Court of Appeals was still pending, the Supreme Court ruled in *Minnesota v. Olson*, 495 U.S. 91 (1990), that an overnight guest had a reasonable expectation of privacy in the home in which he was staying. *Id*. Capellan sought reargument at the Appellate Division, which summarily denied, and the Court of Appeals denied his renewed application seeking leave to appeal. *Id*. The Second Circuit held that any alleged error in the Appellate Division's ruling in light of *Olson* did not constitute an unconscionable breakdown in the state's corrective process. *Id*. at 72.

This Court concludes that Taylor's Fourth Amendment claim is not cognizable in this Federal habeas proceeding and must be dismissed. There is, however, a second component to this claim, in which Taylor contends that police investigators "violated [his] Fourth Amendment rights" by attempting to "circumvent" the requirements of SCA by "using a false claim of exigent circumstances: that [he] was attempting to evade law enforcement." ECF No. 1 at 5; *see*, *e.g.*, *Sorrentino v. Lavalley*, No. 12CV7668VSBDF, 2016 WL 3460418, at *2 (S.D.N.Y. June 21, 2016) (addressing claim that CSLI should have been suppressed because it was obtained in violation of the Fourth Amendment and the SCA). The Respondent argues that this claim is also barred by *Stone v. Powell* as an attempt to evade the *Stone* bar by recharacterizing Taylor's Fourth Amendment claim as a federal statutory claim and is otherwise unexhausted and meritless.

The Court agrees that Taylor's "[a]ttempts to find other names for [his Fourth Amendment] claim will not make it any more cognizable in the context of a federal habeas petition." *Herrera v. Kelly*, 667 F. Supp. 963, 970 (E.D.N.Y. 1987).  In any event, a violation of a federal statutory right is cognizable in a habeas proceeding only if it constitutes "a fundamental defect which inherently results in a complete miscarriage of justice." *Reed v. Farley*, 512 U.S. 339, 354 (1994) (quoting *Stone*, 428 U.S. at 477, n.10).  Here, Taylor has failed to demonstrate a fundamental defect resulting in a complete miscarriage of justice.  As noted by the Appellate Division, even if there had been an SCA violation, Taylor "would not be entitled to suppression of the evidence." *Taylor*, 158 A.D.3d at 1099 (collecting cases).

> The availability of the suppression remedy for statutory, as opposed to constitutional, violations turns on the provisions of the statute rather than the judicially fashioned exclusionary rule aimed at deterring violations of Fourth Amendment rights.  Here, the statute provides that a violation of the SCA may be punishable by criminal or civil penalties or administrative discipline.

*Id*. (internal quotation marks, alterations, and citation omitted) (quoting *United States v. Donovan,* 429 U.S. 413, 432 n.22 (1977)) (citing 18 USC §§ 2701(b), 2707; *United States v. Zodhiates*, 166 F. Supp. 3d 328, 335 (W.D.N.Y. 2016), *aff'd*, 901 F.3d 137 (2d Cir. 2018) ("[S]uppression of evidence is not a remedy for alleged violations of the SCA." (internal quotation marks and alterations omitted)).  This claim is dismissed.

### B. Ineffective Assistance of Counsel

To prevail on a claim of ineffective assistance of counsel, a habeas petitioner must demonstrate (1) that "counsel's representation fell below an objective standard of reasonableness" and (2) that he suffered actual prejudice, which is defined as "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington,* 466 U.S. 668, 688, 694 (1984).  In determining whether the test has been

met, the court "must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." *Harrington v. Richter*, 562 U.S. 86, 104, 131 (2011) (quoting *Strickland*, 466 U.S. at 689). "[D]ecisions which fall squarely within the ambit of trial strategy . . . if reasonably made, will not constitute a basis for an ineffective assistance claim." *United States v. Nersesian*, 824 F.2d 1294, 1321 (2d Cir. 1987). The *Strickland* standard "does not guarantee perfect representation, only a reasonably competent attorney." *Harrington*, 562 U.S. at 110 (internal quotation marks omitted).

A habeas petitioner alleging ineffective assistance of counsel "faces an additional hurdle: the high standard of deference that this Court owes to the state court's finding that he received constitutionally adequate assistance." *Rupert v. Noeth*, 510 F. Supp. 3d 3, 7 (W.D.N.Y. 2020) (citing *Winfield v. Dorethy*, 956 F.3d 442, 451 (7th Cir. 2020)). Petitioner mush show not only that his attorney was ineffective, but also that the state court's ruling is "so lacking in justification that there was an error . . . beyond any possibility of fairminded disagreement." *Id*. (quoting *Burt v. Titlow*, 571 U.S. 12, 19-20 (2013)).

Here, Taylor claims his appellate counsel was ineffective for failing to file a motion for reargument of the Appellate Division's February 2, 2018 decision and a motion to renew his motion to suppress CSLI data in Wayne County Court following the Supreme Court's decision in *Carpenter*. ECF No. 1-2 at 1-14. First, as Respondent notes, Taylor himself filed a *pro se* motion for reargument on March 28, 2019 raising the *Carpenter* claim that was denied as untimely by the Appellate Division because it was filed after the 30-day deadline for reargument motions. ECF No. 16-4 at 113-30, 134; *see also* N.Y. Comp. Codes R. & Regs. tit. 22, § 1250.16 ("A motion for reargument . . . from an order of the court shall be made within 30 days after service of the order of the court with notice of entry."). Given that *Carpenter* was decided at least four months after

the Appellate Division's February 2, 2018 decision, it stands to reason that the same motion brought by appellate counsel would have been denied on the same ground.

Moreover, as District Judge Larimer recently recognized in *Lively v. Royce*, the Supreme Court "was very clear that its decision in *Carpenter* did not 'call into doubt warrantless access to CSLI in [exigent] circumstances" and "urgent situation[s]." No. 19-CV-6844L, 2021 WL 5859737, at *4 (W.D.N.Y. Dec. 10, 2021) (quoting *People v. Lively*, 163 A.D.3d 1466, 1468 (2018) ("[W]e . . . conclude that there is little or no chance that the motion to suppress the historical CSLI . . ., if timely made, would have been successful.")). In *Carpenter*, "[t]he Supreme Court recognized that 'case-specific exceptions may support a warrantless search of an individual's cell-site records under certain circumstances.'" (quoting *Carpenter*, 138 S. Ct. at 2222). "[E]ven though the Government will generally need a warrant to access CSLI, case-specific exceptions may support a warrantless search of an individual's cell-site records under certain circumstances." *Carpenter*, 138 S. Ct. at 2222.

The Court therefore concludes that appellate counsel was not ineffective in failing to bring a motion, post-*Carpenter*, to reargue the suppression of Taylor's CSLI. *See Lively*, 2021 WL 5859737, at *4 (citing *People v. Caban*, 5 N.Y.3d 143, 152 (2005) ("There can be no denial of effective assistance of trial counsel arising from counsel's failure to make a motion or argument that has little or no chance of success")). Relief on Taylor's ineffective assistance claim is denied.

### C. Motion for Stay and Abeyance

Taylor requests a stay and abeyance to permit him to exhaust "unresolved State Court issues." ECF Nos. 1-3, 5.

A petitioner must exhaust the judicial remedies for each claim that he seeks to assert in a federal habeas proceeding. 28 U.S.C. § 2254(b)(1); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842

(1999). Pursuant to *Rhines v. Weber*, 544 U.S. 269, 277-78 (2005), in limited circumstances, a district court may exercise its discretion to stay habeas proceedings with respect to a petitioner's exhausted claims, so that the petitioner can return to state court in order to exhaust his unexhausted claims and then return to the district court to reinstate the previously unexhausted claims. The *Rhines* standard, however, requires (1) "good cause" for the failure to exhaust the claims in state court, (2) that the unexhausted claims the petitioner seeks to pursue in state court are not plainly meritless, and (3) that the petitioner has not engaged in dilatory litigation tactics. 544 U.S. at 277-78; *see also Serrano v. Royce*, No. 20CIV6660PMHJCM, 2021 WL 1564759, at *3 (S.D.N.Y. Apr. 21, 2021).

Here, the Court cannot determine whether there is good cause for Taylor's failure to exhaust or whether his unexhausted claims are not plainly meritless. Taylor offers no explanation for his failure to exhaust, and he fails to state the nature of his unexhausted claims. Consequently, Taylor fails to meet the *Rhines* standard and his request for a stay must be denied accordingly.

## CONCLUSION

For the reasons set forth above, Petitioner's request for a writ of habeas corpus is denied and the Petition, ECF No. 1, is dismissed. Because Petitioner has failed to make a substantial showing of the denial of a constitutional right, *see* 28 U.S.C. § 2253(c)(2), the Court declines to issue a certificate of appealability.

IT IS SO ORDERED.

Dated: March 28, 2022
      Rochester, New York

_____
HON. FRANK P. GERACI, JR.
United States District Judge
Western District of New York